STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
COUNTY OF DURHAM     SUPERIOR COURT DIVISION
    17-CVS-_____

JACK ARMITAGE,

    Plaintiff,

v.

BIOGEN INC.,

    Defendant.

**COMPLAINT**
(JURY TRIAL DEMANDED)

COMES NOW Plaintiff Jack Armitage, by and through his attorneys, and for his Complaint against Defendant Biogen Inc., alleges and states as follows:

## PARTIES

1. Plaintiff is a citizen and resident of St. Charles County, Missouri. Prior to April 2017, Plaintiff resided in North Carolina and worked at the offices of Defendant Biogen Inc. located in Durham County. At the time of the events giving rise to this action, Plaintiff was 52 years of age.

2. Upon information and belief, Defendant Biogen Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Cambridge, Massachusetts. Defendant employs more than nine hundred (900) workers at its facility in Durham County, North Carolina. Defendant may be served through its North Carolina registered agent, Corporation Service Company, at 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina 27608. Biogen Inc. maintains offices and does business in Durham County, North Carolina.

1

3. Biogen Inc. is an employer engaged in an industry affecting interstate commerce and employs more than twenty (20) regular employees.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in Superior Court because this is a civil action in which the amount in controversy exceeds the sum or cost of twenty-five thousand dollars ($25,000), exclusive of interest or attorneys' fees and costs.

5. Venue is proper in Durham County because a substantial portion of the events creating the dispute between the parties occurred in this County.

## FACTUAL BACKGROUND

6. Biogen Inc. is a biotechnology company that produces and sells pharmaceutical products and therapies, particularly those intended to treat autoimmune conditions such as Multiple Sclerosis ("MS").

7. In early 2016, Biogen Inc.'s Durham facility experienced a number of changes in management and facility leadership.

8. Following the 2016 management change, Biogen Inc.'s human resources office in Durham has been engaged in a campaign to recruit and promote more so-called "Millennial" workers, giving them greater say in the management of the company.

9. Upon information and belief, Biogen's push to recruit, retain and promote more "Millennial" workers has resulted in the loss of employment opportunities within Biogen for older workers.

10. Plaintiff was employed at Biogen Inc. from 2003 until March 28, 2017.

11. Plaintiff held the position of Quality Control Supervisor from 2003 until 2015.

12. In 2015, Plaintiff was promoted to the position of Associate Director of Manufacturing. Plaintiff held this position until on or about January 16, 2017, and retained the title (but not the duties) until the termination of Plaintiff's employment on March 28, 2017.

13. Plaintiff possessed all necessary qualifications to hold the position of Associate Director of Manufacturing.

14. Plaintiff satisfactorily performed all essential duties of the position of Associate Director of Manufacturing.

15. As the Associate Director of Manufacturing, Plaintiff was a member of the Durham office management team, and had supervisory authority over a large manufacturing department that produced millions of dollars of product per day and employed at least fifty (50) employees.

16. After the management changes in early 2016, Plaintiff was the oldest member of the management team at Biogen Inc.'s Research Triangle Park facility.

17. On or about January 13, 2017, Plaintiff was stripped of his core job duties as Associate Director of Manufacturing, was removed from his supervisory responsibilities, and was told that thereafter he would report to work at an off-site satellite facility.

18. Plaintiff's job duties as Associate Director of Manufacturing were given to a younger worker.

19. When Plaintiff reported to the off-site facility on or about January 17, 2017, he was given a desk, a computer and a telephone, and was instructed to perform "analysis tasks" that were not within his expertise or prior experience at Biogen.

20. Plaintiff performed the "analysis tasks" he was instructed to perform and provided the results to Mr. Miles Devaney, the Senior Director of Manufacturing and Plaintiff's direct supervisor.

21. Upon information and belief, Biogen did not do anything with the analyses Plaintiff was instructed to perform, and they were of no value to the company. They were busy-work assigned to Plaintiff while Biogen waited for Plaintiff to accept a severance package or resign from his employment.

22. Plaintiff continued to report to the off-site facility, continued to perform the analyses, and continued to press to have his job duties returned to him as Associate Director of Manufacturing.

23. On or about January 20, 2017, Biogen Human Resources Site Lead Christy Mabry met with Plaintiff and offered him a severance package.

24. Plaintiff declined the severance package and again pressed to have his job duties as Associate Director of Manufacturing restored to him.

25. After Plaintiff declined the severance package, Biogen stopped even the pretense of having Plaintiff perform "analysis tasks". Instead, Plaintiff reported to work every day and was required to sit at his assigned desk during working hours with nothing of substance to do.

26. Upon information and belief, Biogen stripped Plaintiff of his job duties and required him to sit alone with nothing to do all day while at work with the intent of making Plaintiff's work conditions so intolerable to him that he would resign his position.

27. After more than a month of sitting alone all day with nothing to do, Plaintiff complained to Mr. Devaney in late February or early March that he could not continue to sit alone all day with nothing to do. Mr. Devaney instructed Plaintiff to tell the Site General

4

Manager Robert Kenyon that he was working on analytical tasks, but did not assign Plaintiff any actual work.

28. Plaintiff did not report to work on Monday, March 27, 2017. Plaintiff informed Ms. Mabry that he would return to work when Biogen had work to assign to him.

29. On March 28, 2017, Biogen sent Plaintiff a letter terminating his employment retroactive to March 24, 2017.

30. Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission on the basis of age in July 2017, within 180 days of the discriminatory actions.

31. EEOC mailed Plaintiff a Right to Sue Letter on August 13, 2017, which Plaintiff received on or about August 17, 2017.

## FIRST CLAIM FOR RELIEF

**(Violation of the federal Age Discrimination in Employment Act)**

32. The allegations in paragraphs 1 through 31 above are hereby incorporated by reference.

33. At all times relevant to this Complaint, Plaintiff was more than forty (40) years of age, and was thus within the class of persons protected by the ADEA.

34. Biogen Inc. took action against Plaintiff that adversely affected Plaintiff.

35. Biogen Inc. stripped Plaintiff of all of his job duties as Associate Director of Manufacturing and gave those essential job duties to a worker younger than Plaintiff.

36. On and after January 17, 2017, Biogen Inc. made Plaintiff's working conditions and environment so unusually adverse that a reasonable employee in Plaintiff's position would have felt compelled to resign.

37. Upon information and belief, Biogen Inc. intentionally made Plaintiff's working conditions intolerable, and specifically intended to force Plaintiff to resign his position.

38. Upon information and belief, age was a determinative factor in Biogen's decision to take away Plaintiff's job duties and to constructively discharge him.

39. As a result of Biogen's discriminatory employment actions, Plaintiff has incurred substantial damages, in a sum in excess of twenty-five thousand ($25,000).

### SECOND CLAIM FOR RELIEF

(Wrongful Discharge in Violation of Public Policy – Age Discrimination)

40. The allegations in Paragraphs 1 through 39 are hereby incorporated by reference.

41. Plaintiff was wrongfully stripped of his job duties and constructively discharged in violation of public policy as expressed in the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.1 et seq., which provides that it is the public policy of the State of North Carolina to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on the basis of age by employers that regularly employ fifteen (15) or more employees.

42. At all times relevant to the Complaint, Plaintiff was more than forty (40) years of age, and was within the class of persons protected by N.C. Gen. Stat. § 143-422.2.

43. Biogen Inc. took adverse employment actions against Plaintiff because of his age, in violation of North Carolina public policy.

44. Biogen's adverse employment actions against Plaintiff because of his age caused him to suffer substantial damages in a sum in excess of twenty-five thousand ($25,000).

45. The conduct, acts and omissions of Biogen Inc. constitute malicious, willful and wanton conduct or are in reckless disregard and indifference to Plaintiff's rights.

WHEREFORE, Plaintiff Jack Armitage respectfully requests that the Court enter judgment in his favor and award him the following relief:

A. That he recover from Biogen Inc. all wages, benefits and other compensation to which he is entitled, including all back pay and front pay as allowed by law, in a sum in excess of $50,000.00 plus interest as allowed by law;

B. That he have and recover from Biogen Inc. a sum in excess of $50,000 in compensatory damages, plus interest as allowed by law;

C. That he have and recover from Biogen Inc. a sum in excess of $50,000 in punitive damages, plus interest as allowed by law;

D. That he recover from Biogen Inc. the reasonable costs of attorneys' fees incurred in the prosecution of this action, plus interest as allowed by law;

E. That all costs of this action be taxed against the Defendant;

F. That all issues in this case be tried to a jury; and

G. For such other and further relief that the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury.

Respectfully submitted this 9th day of November, 2017.

THE NOBLE LAW FIRM, PLLC

*Kathryn Abernethy*

Kathryn Abernethy (N.C. Bar No. 48933)
141 Providence Rd., Suite 210
Chapel Hill, NC. 27514
Office: (919) 251-6008
Fax: (919) 869-2079
Email: katie.abernethy@thenoblelaw.com

*Attorneys for Plaintiff*