IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JACK ARMITAGE,                )
                              )
            Plaintiff,        )       1:17CV1133
                              )
      v.                      )
                              )
BIOGEN, INC.,                 )
                              )
            Defendant.        )

## MEMORANDUM OPINION AND ORDER OF
## UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Plaintiff Jack Armitage's ("Plaintiff") Motion to Compel Discovery (Docket Entry 25) and Biogen, Inc.'s ("Biogen") Motion for Protective Order (Docket Entry 20.) For the following reasons, the Court will GRANT Plaintiff's motion to compel, DENY Defendant's motion for protective order, and order Biogen to respond to Plaintiff's discovery requests as set forth below.

### I. BACKGROUND

Plaintiff was employed at Biogen from 2003 until March 28, 2017. (Compl. ¶ 10, Docket Entry 6.) Plaintiff held the position of Quality Control Supervisor from 2003 until 2015. (*Id.* ¶ 11.) In 2015, Plaintiff was promoted to the position of Associate Director of Manufacturing and held the title until termination of employment on March 28, 2017. (*Id.* ¶ 12.) Plaintiff alleges that Biogen stripped Plaintiff of his job duties and required him to sit alone with nothing to do all day while at work with the intent of making Plaintiff's work environment so intolerable to him that he would resign his position. (*Id.* ¶¶ 26, Document

1

Entry 21-2.) Plaintiff also alleges that due to his age he was disciplined, demoted, and constructively discharged in violation of the Age Discrimination in Employment Act. (Document Entry 21-2.) Plaintiff was 52 years of age when the alleged discrimination occurred. (*Id.*)

Biogen alleges that Plaintiff was removed from his position because Plaintiff created a "culture of fear" in his division. (Defs.' Br. Supp. Mot. Prot. Order at 2, Docket Entry 21.) James Phillips, aged 47, immediately replaced Plaintiff. *Id.* Mr. Phillips served in that position for ten months before accepting a promotion to Director of Manufacturing at Biogen's Switzerland facility. (*Id.* at 3.) Mr. Phillips accepted the offer in July 2017 but remained in Plaintiff's former position until November 2017. (*Id.*) In August 2017, Plaintiff filed two charges with the EEOC while Mr. Phillips was in Plaintiff's former position. (*Id.*) However, in June 2017, Biogen announced that Mr. Phillips accepted the position in Switzerland and Biogen posted Plaintiff's former position internally for applicants. (Wagstaff Decl. ¶ 3, August 30, 2017, Docket Entry 26-9.) Ms. Rachel Ney, Plaintiff's alleged comparator, replaced Mr. Phillips. At the time of hire, Ms. Ney was between 38 and 40 years old.[1] (Pltf's Br. Supp. Mot. Compel at 1, Document Entry 26.)

On March 12, 2018, the undersigned approved the parties' joint motion establishing a period for discovery. (*See* Joint 26(f) Report, Docket Entry 12; Docket Entry 13.) The joint report provided, "[r]eports required by Rule 26(a)(2)(B) and disclosures required by Rule 26(a)(2)(C) are due during the discovery period." (Joint 26(f) Report at 2.) On June 15, 2018,

---

[1] Although the position was posted in June 2017, it is unclear when Ms. Ney was hired, or how old she was when she was hired. *See also* Wagstaff Dep. 134:9-11 (Mr. Wagstaff guessed Ms. Ney's age to be "somewhere around 40" years old).

the parties stipulated to a consent protective order. (Docket Entry 18.) On April 10, 2018, Plaintiff served his first set of interrogatories. (Docket Entry 26-1.)

In the motion(s) at issue, Plaintiff moves the Court to compel Biogen to produce answers to Plaintiff's first interrogatory No. 4 and documents requested pursuant to Plaintiff's second request for production of documents Nos. 3 and 6. (Docket Entry 25 at 4.) On April 10, 2018, Plaintiff asked Biogen to provide detailed information regarding the process utilized to hire for Plaintiff's position once it was posted, pursuant to Biogen's company policy. (Docket Entry 25-2 at 6.) Biogen responded in part[2], but objected to the bulk of Plaintiff's request as overbroad, unduly burdensome, and not proportional to the needs of the case. (Docket Entry 26-5 at 7.) After meeting and conferring with Biogen's counsel, Plaintiff asserts that Biogen was planning to take the position that James Phillips, Plaintiff's immediate replacement, was a "permanent" replacement — although Biogen did not follow its internal policies when it transferred Mr. Phillips into the position, and employees were under the impression that the transfer was temporary. (Docket Entry 26 at 3.) This prompted Plaintiff to serve a second set of Discovery on August 16, 2018. In pertinent part, request for document No. 3 asked Biogen to produce documents reflecting communications between Ms. Ney (who eventually replaced Mr. Phillips), and any member of Human Resources regarding Plaintiff and/or his position. (Docket Entry 26-4 at 5.) Request No. 6 asked Biogen to produce a copy of Ms. Ney's personnel file, including any documents relating to compensation. (*Id.* at 6.)

---

[2] Biogen's response indicated that James Phillips was transferred to Plaintiff's position and there was no recruiting effort to fill Plaintiff's position. Biogen also asserted that "Biogen is presently pursuing discovery and investigation of the facts relating to this case, and has not completed discovery or preparation for trial." (Docket Entry 26-5 at 7-8.)

3

Biogen served its responses on September 17, 2018, objecting generally, that Plaintiff's Request No. 3 is "overly broad and unduly burdensome in disproportion to the likelihood of the production likely to lead to the discovery of information in this case." (Document Entry 20-6 at 5.) More specifically, Biogen objected on the basis that Mr. Phillips immediately succeeded Plaintiff; not Ms. Ney. (*Id.*) Biogen made the same objections to request No. 6 and further objected on the grounds that Ms. Ney was "not identified in the EEOC charge, complaint, initial disclosures, or Plaintiff's first set of interrogatories." (*Id.* at 7-8.)

On October 3, 2018, Counsel for both parties met and conferred. Plaintiff's counsel discussed that they would consider withdrawing the requests for information regarding Ms. Ney, if Biogen agreed to produce documentation showing that Biogen's local RTP office obtained the necessary internal approvals to circumvent Biogen's internal policies for filling open positions when Biogen transferred Mr. Phillips in Plaintiff's former position. (*See* Docket Entry 26 at 5; 29-7 at 2-4.) Biogen refused to provide any such information, and instead filed a motion for protective order on October 11, 2018.

**II. DISCUSSION**

As a general rule, Federal Rule 26(b) provides general provisions regarding the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

4

Fed. R. Civ. P. 26(b)(1). District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995); *Erdmann v. Preferred Research, Inc. of Georgia*, 852 F.2d 788, 792 (4th Cir. 1988). "[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Carter Hughes v. Research Triangle Inst.*, No. 1:11CV546, 2014 WL 4384078, at *2 (M.D.N.C. Sept. 3, 2014) (citation omitted) (unpublished).

Additionally, pursuant to Rule 26(c) Federal Rules of Civil Procedure, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). Protective orders pursuant to Rule 26(c) "should be sparingly used and cautiously granted." *Medlin v. Andrew*, 113 F.R.D. 650, 652 (M.D.N.C. 1987). "Not only are protective orders prohibiting depositions rarely granted, but [P]laintiff has a heavy burden of demonstrating the good cause for such an order." *Id.* at 653 (citation omitted). "Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988) (citation omitted). Thus, "[i]n order to obtain a protective order prohibiting a deposition, the proponent must convince the Court that the information sought by the deposition lacks relevance to the extent that the likelihood and severity of the harm or injury caused by the deposition outweighs any need for the information." *Id.* Trial courts have broad discretion

"to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Plaintiff now moves the Court to compel Biogen to provide or produce answers to Plaintiff's first interrogatory No. 4 and documents requested pursuant to Plaintiff's second request for production of documents Nos. 3 and 6. (Docket Entry 25.) Biogen moves the Court to grant a protective order over the same requests. (Docket Entry 20.) In this case, the decision on the motion to compel will provide an answer to the motion for a protective order. *See e.g.*, *Holtz v. Jefferson Smurfit Corp.*, 378 F. Supp. 2d 668, 670 (M.D.N.C. 2005).

### 1. Interrogatory No. 4

The Rules provide, "a party may serve on any other party . . . written interrogatories." Fed. R. Civ. P. 33(a)(1). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories." Fed. R. Civ. P. 33(b)(2). The Rules further authorize "[a] party seeking discovery [to] move for an order compelling an answer, designation, production, or inspection" to discovery requests if "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents or fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).

Plaintiff seeks a full response to first Interrogatory 4, which asked Biogen to state the following: 1) the date when Biogen commenced recruiting activities; 2) the date when the

position held by the Plaintiff was filled; and 3) the name and address of the person hired, together with the person's age and starting salary. (Docket Entry 26-2 at 6.)

In support of its objections, Biogen argues the following: Biogen adequately responded to the interrogatory and identified James Phillips as the replacement, who was transferred from small scale manufacturing to lead cell culture in large scale manufacturing in January 2017; Biogen indicated that Mr. Phillips was aged 47 at the time, and indicated that there was no recruitment effort because Mr. Phillips was known to be capable of performing the job and improving the culture issues in large scale manufacturing. (Defs.' Br. Opp. Mot. Compel at 7, Docket Entry 30.) Biogen also argues that there was no reason for Biogen to believe from a plain reading of Interrogatory No. 4 that a response would name anyone other than Mr. Phillips. (*Id.*)

In its motion for protective order, Biogen argues that the motion should be granted because Plaintiff's requests are neither relevant nor proportionate to any claim or defense. (Defs.' Br. Supp. Mot. Prot. Order at 6, Docket Entry 21.) In addition, Mr. Phillips as Plaintiff's replacement creates an inference of non-discrimination that will be dispositive in this manner. (*Id.* at 8.) Biogen argues that the Court lacks subject matter jurisdiction over Plaintiff's ADEA claims to the extent they are based on Ms. Ney replacing Plaintiff. Biogen asserts that, "Plaintiff was obligated to file an EEOC Charge regarding Biogen's selection of Ms. Ney to succeed James Phillips if he intended to pursue an age discrimination claim under the ADEA on that basis, and cannot rely on the EEOC Charges that he filed while Mr. Phillips

7

was still the LSM Associate Director, Cell Culture for such a claim."[3] (*Id.* at 10.) Plaintiff argues that the focus of an age discrimination analysis must be on the age difference between the plaintiff and her permanent replacement, not between the plaintiff and her temporary replacement.[4] Although the court will not address the parties' merit-based arguments at this stage of the proceedings, the court agrees that Plaintiff's Interrogatory 4 and his related requests for production are relevant and proportional to the needs of the case — specifically, to address whether Biogen intended for Ms. Ney to permanently replace Plaintiff.

Although Plaintiff's interrogatory No. 4 suggests that he is seeking information on Mr. Phillips alone, the parties have communicated that Biogen's answers should include information on Ms. Ney. In addition, Biogen is aware of Plaintiff's position that Biogen's hiring of Mr. Phillips was allegedly intended to disguise discrimination; Mr. Philips allegedly

---

[3] To support its argument, Biogen relies on *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (holding that a plaintiff's failure to exhaust his administrative remedies on an ADEA claim will deprive federal courts of subject matter jurisdiction over the claim); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by a reasonable investigation of the original complaint may be maintained in a subsequent [ADEA] lawsuit."); and *Chako v. Patuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005) (holding that The Fourth a plaintiff may not expand an adverse employment action beyond the allegations stated in the original EEOC charge).

[4] *See, e.g. Delvin v. WSI Corp.*, 853 F. Supp. 69 76 n.6 (D. Mass. 1993) (denying summary judgment where plaintiff was replaced by someone also within the protected age group, but who was in the position for only six months, finding a disputed material fact regarding whether the first replacement was temporary or permanent). *See also Gries v. Zimmer, Inc.*, No. 90-2430, 1991 U.S. App. LEXIS 16729, at *19 n.5 (4th Cir. 1991) (overruling judgment notwithstanding the verdict and reinstating jury verdict in favor of ex-employees' age discrimination suit, where employee introduced evidence contesting employer's characterization of a temporary replacement within the protected class as permanent: "Although Hufziger initially accepted the job, evidence showed that the job was initially only temporary, that Hufziger had lived in Indiana for twenty-five years and was not looking to move, that prior to making the permanent offer to Hufziger, Zimmer had begun an outside search for a candidate, and that the date of the permanent offer to Hufziger appears to have followed a May 12, 1987 letter from Moran to Davis (although Davis claims he never received it) raising the age discrimination issue.")

anticipated moving to Europe before or around the time he filled Plaintiff's position; and there was discussion that HR intended to hire Ms. Ney as Mr. Philips replacement before all the interviews were concluded. Jimmy Wagstaff, a former Biogen employee, stated in his declaration that the "culture of prejudice and bias against older male employees that HR were creating within Biogen" were one of the reasons he left the company. (Wagstaff Decl. ¶ 20, August 30, 2017, Docket Entry 26-9.) Mr. Wagstaff stated that he immediately applied for Plaintiff's former position when it was posted. (*Id.* ¶ 18.) In addition, Mr. Wagstaff stated that before interviews were concluded, he heard that hiring Ms. Ney was a "foregone conclusion," which he found to be "highly inappropriate." (*Id.* ¶ 19.) Furthermore, Mr. Wagstaff found it "odd" that Biogen's HR director Christy Mabry discouraged him from seeking the position — despite his 15–plus years of operational leadership experience, compared to Ms. Ney's lack of experience in that part of the business. (Wagstaff Decl. ¶¶ 18-20.) Moreover, shortly after he was informed that he was not selected for the position, Mr. Wagstaff learned that "[Ms. Mabry] 'inserted' herself in the final decision–making process and ultimately [HR] made her hire [Ms. Ney]." (*Id.* ¶ 21.) Although Mr. Wagstaff stated in his deposition that he mistakenly referred to Mr. Philips as an "interim" replacement, (*See* Wagstaff Dep. 119:16-19, 23, 120:2-4, Docket Entry 31-12), Mr. Wagstaff also stated that he and his colleagues thought Mr. Philips would eventually fill the open position in Switzerland, because Mr. Phillips made several trips to the country while he was in Plaintiff's former position. (Wagstaff Dep. 162:20-25, 163:1-6.) In sum, the Court will grant Plaintiff's request.

9

### 2. Documents and ESI

Under the Rules, any party may "serve on any other party a request . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample [designated documents or electronically stored information] in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). "The party to whom the request is directed must respond in writing within 30 days after being served." Fed. R. Civ. P. 34(b)(2)(A). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

Here, Plaintiff seeks additional documents and ESI. (Pl.'s Br. Supp. Mot. Compel at 5, 13-15.) Specifically, Plaintiff asks the Court to compel Biogen to produce documents reflecting communications between Ms. Ney and any member of Human Resources regarding the following: Ms. Ney's interest in or qualifications for a position in Large Scale Manufacturing; Ms. Ney's professional development plans and/or any plans to promote Ms. Ney or advance her career; and/or communications regarding Plaintiff. (Docket Entry 26-4 at 5.) Request No. 6 asked Biogen to produce a copy of Ms. Ney's personnel file, including evaluations, positions held at Biogen, hiring documents, career path plans, documents relating to Biogen's offer to Ms. Ney of Plaintiff's former position in Large Scale Manufacturing, and Ms. Ney's compensation in Plaintiff's former position. (*Id.* at 6.)

To be within the scope of discovery, a fact must be relevant. That is, "'the fact must be germane to a claim or defense alleged in the pleading for information concerning it to be a proper subject of discovery.'" *Columbian Chem. Co. v. AIG Specialty Ins. Co.*, No. 5:14-CV-166,

2015 WL 12755711, at *3 (N.D.W. Va. Sept. 18, 2015) (unpublished) (quoting *In re PE Corp. Sec. Litig.*, 221 F.R.D. 20, 24 (D. Conn. 2003). A plaintiff's allegations "define the extent of [her] claims in [a] case, and, therefore, the appropriate scope of discovery." *Novak v. Pearlstein*, No. 13-CV-8861, 2016 WL 3586899, at *2 (N.D. Ill. June 24, 2016) (unpublished); *see also, e.g.*, *Shanen v. Assurity Life Ins. Co.*, No. 11-80273-CIV, 2011 WL 13228103, at *6 (S.D. Fla. Sept. 7, 2011) (unpublished) ("[T]he allegations of the pleadings and the issues in the case determine the scope of discovery."). However, "counsel should be forewarned against taking an overly rigid view of the narrowed scope of discovery. While the pleadings will be important, it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer." *Thompson v. Dep't of Hous. & Urban Dev.,* 199 F.R.D. 168, 172 (D. Md. 2001).

Here, the Court is not prepared to conclude that the information sought is not germane to Plaintiff's claims (or to Biogen's defenses) and therefore beyond outside the scope of permissible discovery. Nevertheless, "[e]ven assuming that th[e] information is relevant (in the broadest sense), the simple fact that requested information is discoverable . . . does not mean that discovery must be had. On its own initiative or in response to a motion for protective order under Rule 26(c), a district court *may* limit [discovery] . . . ." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) (emphasis added). Moreover, "[a]s a general rule, under Federal Rule of Civil Procedure 26(b)(2)(C)'s proportionality analysis, 'the court *must* limit the frequency and extent of discovery otherwise allowed by these rules . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely

benefit.'" *CSX Transportation, Inc. v. Peirce*, No. 5:05-CV-202, 2012 WL 12892735, at *5 (N.D.W. Va. July 18, 2012) (unpublished) (emphasis added) (citation omitted).

Plaintiff argues that his request does not impose an undue burden because Plaintiff has requested information "only about the individual he claims was his comparator, Ms. Ney, and the individual Biogen claims to be Plaintiff's comparator, Mr. Phillips." (Pl.'s Br. Supp. Mot. Compel at 7, Docket Entry 26 at 7.) Plaintiff argues that "at a minimum, the dispute over whether and which employee temporarily or permanently replaced Plaintiff is material to the legal questions presented in this case, and thus [Biogen] must produce discovery that would shed light on the issue." (*Id.* at 8.) Biogen argues that production of Ms. Ney's personnel file and communications Plaintiff seeks will only "subject [Ms. Ney] to annoyance, embarrassment and oppression and subject Biogen to annoyance, oppression and undue burden and expense." (Def's Resp. Mot. Compel, Docket Entry 30 at 8.) The court agrees with Plaintiff's contentions.

In *Cason v. Builders FirstSource–Southeast Group, Inc.,* the court noted that there is a strong public policy against the public disclosure of personnel files, although not covered by a per se privilege. 159 F. Supp. 2d 242, 247-248 (W.D.N.C. 2001) (citing *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105-06 (E.D.N.C.1993) ("It cannot be denied that personal privacy and accurate employee evaluations are important public policy concerns.")) However, where the files sought are those of employees whose action or inaction has a direct bearing on the plaintiff's claims or defendant's affirmative defenses and especially where, as here, the court has issued an appropriate confidentiality order, personnel files are subject to discovery. *See id., Accord Johnson v. Morris*, 903 F.2d 996, 998 (4th Cir. 1990) (pursuant to a protective order,

defendant's investigative file and the personnel files of all employees, who supplied information during the investigation, were produced); and *Blount*, 162 F.R.D. at 105-06 (ordering production of personnel files of employees directly implicated by plaintiff because the files contained information which was "clearly relevant" and not otherwise readily available).

As to the personnel files of Ms. Ney — who Plaintiff asserts is his comparator, and who Biogen maintains is not Plaintiff's comparator — in addition to any communications that would be germane to any claim or defense in this matter, the Plaintiff's right to conduct meaningful discovery outweighs the public policy against the general disclosure of personnel files. Therefore, the undersigned will grant Plaintiff's request as to Document Nos. 3 and 6.

### III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Plaintiff's motion (Docket Entry 25) is **GRANTED,** and Defendant's motion (Docket Entry 20) is **DENIED.** As set forth above, Biogen shall produce to Plaintiff:

(1) on or before **February 2, 2019**, any detailed information regarding the process utilized to hire for Plaintiff's position once it was posted, pursuant to Biogen's company policy; including, but not limited to:

   a) the date when Biogen commenced recruiting activities to fill the Associate Director position after Mr. Phillips accepted the promotion in Switzerland;

   b) the date the position was filled by Ms. Rachel Ney; and

   c) Ms. Ney's age and starting salary.

(2) on or before **February 2, 2019**, A copy of Ms. Ney's personnel file, including evaluations, positions held at Biogen, hiring documents, career path plans, documents relating to Biogen's offer to Ms. Ney of Plaintiff's former position in Large Scale Manufacturing, and Ms. Ney's compensation in Plaintiff's former position; and

(3) on or before **February 2, 2019,** any documents and ESI of communications between Ms. Ney and any member of Human Resources regarding: Ms. Ney's interest in or qualifications for a position in Large Scale Manufacturing; Ms. Ney's professional development plans and/or any plans to promote Ms. Ney or advance her career; and/or communications regarding Plaintiff.

_____
Joe L. Webster
United States Magistrate Judge

January 2, 2019
Durham, North Carolina