IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JACK ARMITAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV1133 |
| | ) | |
| | ) | |
| BIOGEN INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this action in Durham County Superior Court on November 9, 2017, against his former employer, Defendant Biogen Inc. ("Biogen"), alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and wrongful termination in violation of North Carolina public policy. (ECF No. 1-1.) Defendant removed the case to this court on December 21, 2017. (ECF No. 1.) Before the Court are Defendant's Motion for Summary Judgment, (ECF No. 32), and Defendant's and Plaintiff's Motions to Seal Documents, (ECF Nos. 36, 44). For the reasons set forth below, the parties' motions to seal will be granted, and Defendant's motion for summary judgment will be granted.

I.     **BACKGROUND**

Biogen is a "biotechnology company that produces and sells pharmaceutical products and therapies." (ECF No. 1-1 ¶ 6.) Plaintiff was hired by Defendant in 2003, when Plaintiff

was 38 years old. (ECF No. 33-2; *see* ECF No. 34-6 ¶ 9(b).) Plaintiff worked in Defendant's RTP office, located in Durham, North Carolina, and served in many different positions, eventually being promoted in 2015 to Associate Director of Large Scale Manufacturing ("LSM") and leader of the Cell Culture division. (ECF No. 1-1 ¶ 1; ECF No. 34-1 at 15–22; ECF No. 34-6 ¶ 9(b).) In 2016, Plaintiff's direct supervisor was Andy Stober, Senior Director of Manufacturing and leader of LSM. (ECF No. 34-6 ¶ 9(a); ECF No. 34-7 ¶¶ 11–12.)

Starting in June 2016, Christie Mabry, Defendant's Human Resources ("HR") Site Leader for the RTP office, began receiving "complaints relating to employee culture within LSM and how people were being treated by and within LSM." (ECF No. 34-6 ¶¶ 6–7.) Ms. Mabry compiled those complaints into a report, which she shared with Bob Kenyon, Vice President of North American Manufacturing Operations and Site Manager for Defendant's RTP facility. (*Id.* ¶¶ 8, 10.) Mr. Kenyon, who had also independently become aware of "culture issues in LSM," advised his supervisor about the above issues. (ECF No. 34-7 ¶¶ 14–16.) In October 2016, Mr. Kenyon's supervisor asked Elizabeth Brown, a Biogen HR professional who worked in a different part of the company and was therefore unfamiliar with the LSM department, to conduct an independent assessment of the culture within LSM. (ECF No. 34-5 at 3, 5–6.) Ms. Brown's report found that Plaintiff, his supervisor Mr. Stober, and another LSM manager created an environment where "employees are afraid to speak up or raise concerns for fear of reprisal" due to their "focus on product delivery to the exclusion of all else." (ECF No. 33-5.) The report further summarized its findings regarding Plaintiff's behavior by stating that he "is known to overreact, interrupt and in general be disrespectful and rude to others." (*Id.*)

In response to the report, Mr. Kenyon "decided to move [Plaintiff] out of his position leading Cell Culture in LSM and to transfer him to an individual contributor role at the [Drug Product Site ("DPS")] under the supervision of Miles Devaney."  (ECF No. 34-7 ¶ 27.)  At the time Plaintiff was transferred from LSM to DPS, Plaintiff was 52 years old.  (*See* ECF No. 34-6 ¶ 9(b); ECF No. 34-7 ¶ 28.)  Mr. Kenyon chose James Phillips, who was 47 years old at the time, to replace Plaintiff as Associate Director, Cell Culture.  (ECF No. 34-7 ¶ 32; ECF No. 34-8 ¶ 9).

Although Plaintiff's salary and title remained the same in his new position, (ECF No. 34-7 ¶ 30), his responsibilities changed significantly, (*see* ECF No. 33-10; ECF No. 34-2 at 5–7).  Plaintiff claims that Mr. Kenyon and Mr. Devaney, Plaintiff's new supervisor at DPS, both told Plaintiff to "look[ ] for a new job."  (ECF No. 42-29 at 14, 21; ECF No. 42-31 at 28–29.)  Plaintiff began his new position at DPS on January 17, 2017, (ECF No. 34-2 at 7), and on January 26, 2017, Plaintiff interviewed for a position at Patheon, a pharmaceutical company based in St. Louis, Missouri, (ECF No. 34-1 at 44–45; ECF No. 33-12).  Plaintiff received an offer from Patheon on February 17, 2017, with a start date of March 27, 2017.  (ECF No. 33-13 at 1.)  Plaintiff left Biogen in the middle of the workday on March 17, informing Mr. Devaney that he needed to see his attorney and doctor.  (*See* ECF No. 33-14; ECF No. 34-2 at 14–15.)  Plaintiff never returned to Biogen and was formally terminated for "job abandonment" on March 29, 2017.  (ECF No. 34-6 ¶¶ 21–26; ECF No. 33-18.)

## II. MOTIONS TO SEAL

Both parties have filed motions to seal certain documents,[1] (ECF Nos. 36, 44), pursuant to a Stipulated Consent Protective Order (the "Protective Order") entered on June 15, 2018, (ECF No. 18). The Protective Order allowed the parties to designate as "Confidential" certain types of documents, including "personal information of Defendant's employees . . . including, but not limited to: social security numbers, tax information [and] personnel records," and "confidential proprietary business and proprietary information including, but not limited to, confidential information regarding Defendant's business operations, business strategy, employee benefits and compensation programs, products and customers." (ECF No. 18 at 2.) In accordance with the categories stipulated in the Protective Order, both parties filed certain documents under seal that fit into either of those categories. (*See* ECF Nos. 35-1 to 35-4, 45-1 to 45-23.) Those sealed documents include the reports prepared by Ms. Mabry and Ms. Brown detailing the cultural issues in LSM, their notes taken in preparation of those reports, and other personally identifying information, such as birth dates, of Defendant's employees. (*See id.*)

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Id.* "The common law," however, "does not afford as much substantive protection to the

---

[1] Because Defendant is the party asserting the confidentiality of the documents, only Defendant has filed a brief accompanying its motion to seal. *See* L.R. 5.4(b)–(c).

interests of the press and the public as does the First Amendment." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" *Doe*, 749 F.3d at 265–66 (quoting *Rushford*, 846 F.2d at 253). The First Amendment presumptive right of access, in contrast, extends "only to particular judicial records and documents." *Id.* at 266 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). Further, the First Amendment presumptive right of access may only be restricted upon a showing that such a restriction is "necessitated by a compelling government interest and . . . narrowly tailored to serve that interest." *Id.* (internal quotation marks omitted).

"When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). Substantively, a district court must "first 'determine the source of the right of access with respect to each document.'" *Doe*, 749 F.3d at 266 (quoting *Va. Dep't of State Police*, 386 F.3d at 576). The Fourth Circuit has "squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion." *Id.* at 267. Therefore, the First Amendment right of access applies in this case, as the documents that the parties wish to seal were filed in support of or in opposition to Defendant's summary judgment motion.

Procedurally, a district court presented with a sealing request must "(1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full

5

access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives." *Id.* at 272. Local Rule 5.4 outlines similar requirements.[2] LR 5.4. The burden rests on the party seeking to keep information sealed. *Va. Dep't of State Police*, 386 F.3d at 575.

First, the Court notes that the motions to seal have been publicly docketed since their dates of filing on November 19, 2018, and February 8, 2019. (ECF Nos. 36, 44.) "Any interested party therefore has had sufficient time to seek intervention to contest any sealing order, but the docket reflects no such action." *Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 728 (M.D.N.C. 2013). Accordingly, the Court concludes that the "public notice" requirement has been satisfied. *See id.* (concluding that a motion to seal docketed less than one month before the entry of the order to seal provided sufficient public notice).

Next, Defendant has demonstrated a sufficiently compelling interest in preserving the confidentiality of its employees' sensitive personal information and personnel information regarding confidential internal investigations into "personnel issues and culture concerns." (ECF No. 37 at 7–8); *see Robinson v. Bowser*, No. 1:12CV301, 2013 WL 3791770, at *4 (M.D.N.C. July 19, 2013) (explaining that the interest in keeping "sensitive personal material regarding third parties[ ] private outweighs the First Amendment right of access"). Defendant argues that the details in Ms. Mabry's and Ms. Brown's reports "could harm or embarrass the current and former employees who shared this information with Biogen in confidence and in good

---

[2] These requirements are: (1) stating "the reasons why sealing is necessary;" (2) explaining "why less drastic alternatives to sealing will not afford adequate protection;" (3) "[a]ddress[ing] the factors governing sealing of documents reflected in governing case law;" and (4) stating "whether permanent sealing is sought and, if not, stat[ing] how long the document should remain under seal and how the document should be handled upon unsealing." LR 5.4(b).

6

faith, including possible future retaliation in the job market to the extent they provided criticism about management level employees." (ECF No. 37 at 7.) Further, because simply redacting portions of those reports would be insufficient to protect the identities of those individuals, the Court finds it appropriate for the entirety of those documents to be filed under seal. (*See id.* at 8; ECF Nos. 35-1, 35-2.)

Because the Defendant's interests in preserving the confidentiality of the documents in question overcome the First Amendment presumption of public access to court documents, both parties' motions to seal will be granted.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "[a] fact is material if it might affect the outcome" of the litigation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotation marks omitted). The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When reviewing a motion for summary judgment, the court must view the evidence and "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

In cases where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis omitted)). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). The nonmoving party must support its assertions by citing to particular parts of the record, or by showing that the materials cited do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324. The judicial inquiry on summary judgment "thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

Plaintiff asserts two claims against Defendant: one violation of the ADEA and one violation of the North Carolina Equal Employment Practices Act ("NCEEPA") for constructive wrongful discharge in violation of public policy. (ECF No. 1-1 ¶¶ 32–45.) Both counts will be addressed in turn.

**B. ADEA**

The ADEA makes it unlawful for an employer to discharge an individual based on age. 29 U.S.C. § 623(a)(1). The ADEA specifically prohibits discrimination of employees and

applicants based on age for individuals aged 40 and above. *Id.* § 631(a). The burden of proving that age was a determining factor in an employment decision is on the plaintiff. *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004). A plaintiff can establish his claim of discrimination through direct or circumstantial evidence that age bias motivated the employment decision, or by relying on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *Mereish*, 359 F.3d at 334. Under the *McDonnell Douglas* framework, a plaintiff "must first establish a prima facie case of discrimination by a preponderance of the evidence." *Id.*; *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). To establish a prima facie case of age discrimination a plaintiff must establish: (1) he was a member of the protected class; (2) he was qualified for the job and met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) following the adverse employment action he was replaced by a substantially younger person with comparable qualifications. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006). If Plaintiff succeeds in establishing a prima facie case of his claim, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000). If the defendant satisfies this burden, the presumption of discrimination created by the prima facie case disappears and the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's proffered justification is pretextual. *See Mereish*, 359 F.3d at 334.

Here, Plaintiff seeks to advance his claim of age discrimination based on the *McDonnell Douglas* burden-shifting analysis. (ECF No. 42 at 1.) Neither party disputes that Plaintiff is a

member of a protected class. (*See* ECF No. 33 at 21; ECF No. 42 at 14.) Defendant, however, argues that Plaintiff cannot show a prima facie case of age discrimination for three reasons: Plaintiff did not suffer an adverse employment action; Plaintiff did not meet Defendant's legitimate expectations; and Plaintiff was not replaced by a substantially younger person. (ECF No. 33 at 15, 18, 20.) Plaintiff argues in response that: he was constructively discharged; he was meeting Biogen's legitimate expectations; and his permanent replacement was substantially younger than him. (ECF No. 42 at 14, 15, 18.) The Court concludes that Plaintiff has failed to establish two essential elements of his prima facie case of age discrimination, and that even assuming Plaintiff could show a prima facie case of age discrimination, he has not shown that Defendant's legitimate nondiscriminatory reason for transferring him to DPS was a pretext for discrimination.

   1. *Adverse Employment Action*

Plaintiff is not challenging his termination for "job abandonment" as the adverse employment action of which he complains. Rather, he argues that his transfer from LSM to DPS constituted a "constructive discharge," and thus he has shown that he suffered an adverse employment action. (ECF No. 42 at 14–15.) To prove a claim of constructive discharge, a plaintiff must prove "that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign." *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016). The standard for constructive discharge requires "objective intolerability," but not "deliberateness, or a subjective intent to force a resignation." *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Green*, 136 S. Ct. at 1779–80), *cert. denied*, 138 S. Ct. 976 (2018). "Demotion can

constitute a constructive discharge, especially where the demotion is essentially a career-ending action or a harbinger of dismissal." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994). "However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004)). "A slight decrease in pay coupled with some loss of supervisory responsibilities" is also insufficient to demonstrate constructive discharge. *Carter*, 33 F.3d at 459 (quoting *Jurgens v. EEOC*, 903 F.2d 386, 392 (5th Cir. 1990)).

When Plaintiff was transferred from LSM to his individual contributor role in DPS, his title, salary, and benefits did not change, (ECF No. 34-7 ¶ 30; ECF No. 34-1 at 11), although he claimed, however, that he received a "ridiculously low" raise that year, (ECF No. 34-1 at 11). In his new role, Plaintiff was initially assigned four projects by his supervisor: "1) internalizing labeling and packaging; 2) improvement recommendations for bulk vial packaging; 3) switching from SAP to Oracle; and 4) prepare integration of Aducanumab packaging." (ECF No. 33 at 10; *see* ECF No. 33-10; ECF No. 34-2 at 7–11.) Plaintiff described his displeasure with his new position as follows:

> Q: Then, sir, going to paragraph 26 of the Complaint . . . , you allege, "that upon information and belief, Biogen stripped Plaintiff of his job duties to require him to sit alone with nothing to do all day while at work with intent of making Plaintiff's work conditions so intolerable to him that he would resign his position." What do you base this allegation on?
>
> A: Number one, there really was no job there. Sitting in front of a computer with no work to do is torture. The fact that I had to still work in a company that clearly didn't value results. The fact

11

> that Bob Keny[o]n told me that I should be looking for a new job. All these things speak to that.
>
> . . .
>
> [T]hey took me out of my role and there was not a role for me to move into. I ran an organization of 50-plus employees. We were very high performing. . . . To be taken out of that, put in front of a computer in a label and pack organization where I have never worked, given nothing to do because there was nothing to give me to do constituted a horrible working environment for me.

(ECF No. 42-29 at 13–14, 22–23.) Plaintiff points to conversations with Mr. Kenyon and Mr. Devaney in which, after Plaintiff expressed displeasure with his new role, they encouraged him to look for a new job. (*Id.* at 20–21; ECF No. 42-31 at 28–29.) Plaintiff further points to the "opinion" of Jimmy Wagstaff, a former co-worker of Plaintiff's in LSM, that Plaintiff had been "effectively put out to pasture." (ECF No. 42-32 at 7–8.)

Plaintiff has failed to point to any evidence that shows that his new role as an individual contributor at DPS was "so intolerable that a reasonable person would resign." *Consol Energy*, 860 F.3d at 145 (quoting *Green*, 136 S. Ct. at 1779). Plaintiff's salary and benefits did not decrease as a result of his new role, (ECF No. 34-7 ¶ 30; ECF No. 34-1 at 11), and there is no evidence that he was subject to any harassment or abuse because of his age. Plaintiff's arguments regarding the evidence supporting his constructive discharge claim simply amount to "mere dissatisfaction with work assignments [and] a feeling of being unfairly criticized." *See Heiko*, 434 F.3d at 262. Accordingly, Plaintiff has failed to introduce sufficient evidence to show that his transfer from LSM to DPS amounted to a constructive discharge, and therefore he has failed to demonstrate that he suffered an adverse employment action.

### 2. *Plaintiff's Replacement*

In addition, Plaintiff cannot establish by a preponderance of the evidence that he was replaced by a person who was "substantially younger than the plaintiff." *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). Courts within the Fourth Circuit generally hold that a plaintiff's replacement must be at least 10 years younger to be considered "substantially younger." *See DeBord v. Washington Cty. Sch. Bd.*, 340 F. Supp. 2d 710, 714–15 (W.D. Va. 2004) (collecting cases); *see also Grosjean v. First Energy Corp.*, 349 F.3d 332, 336–38 (6th Cir. 2003) (listing many cases from different courts holding that age differences of more than 10 years are substantial); *Austin v. Alltel Commc'ns, LLC*, No. 1:09CV900, 2013 WL 1465362, at *11 (M.D.N.C. Apr. 11, 2013) (concluding that an age difference of seven years did not satisfy the "substantially younger" element of the prima facie case).

Plaintiff was 52 years old when he was transferred from LSM to his new role at DPS, and his replacement, Mr. Phillips, was five years younger, at 47 years old. (*See* ECF No. 34-6 ¶ 9(b); ECF No. 34-8 ¶ 9.) Plaintiff does not, however, attempt to argue that Mr. Phillips was substantially younger than he was at the time. (*See* ECF No. 42 at 18.) Rather, Plaintiff argues that Mr. Phillips was only intended to be a temporary replacement and that his permanent replacement, Rachel Ney, was 39 years old and therefore satisfied that element of a prima facie case. (*Id.* at 11–12, 18.)

The evidence shows the following: Bob Kenyon made the decision to have James Phillips replace Plaintiff as LSM Associate Director, Cell Culture. (ECF No. 34-7 ¶ 32.) Both Mr. Phillips and Mr. Kenyon described Mr. Phillips' assignment to Plaintiff's old position as

"permanent."³ (*Id.* ¶ 36; ECF No. 34-8 ¶ 7.) Mr. Phillips then served in Plaintiff's old position as LSM Associate Director, Cell Culture for approximately ten months before taking a position in Biogen's Solothurn, Switzerland facility in November 2017. (*See* ECF No. 34-8 ¶¶ 8, 14–15.) After Mr. Phillips announced that he would accept the Solothurn position, Defendant posted that position for internal applicants. (ECF No. 42-32 at 27.) After interviewing the applicants, Defendant selected Ms. Ney to replace Mr. Phillips as Associate Director, Cell Culture. (*Id.* at 19; ECF No. 42-23.) Plaintiff fails to otherwise "cit[e] to particular parts of materials in the record" that would show that Mr. Phillips was intended to only temporarily replace Plaintiff. *See* Fed. R. Civ. P. 56(c)(1)(A). Thus, Plaintiff has failed to point to sufficient evidence in the record to satisfy a second essential element of his prima facie case.

Plaintiff has failed to establish two essential elements of his prima facie case of age discrimination by a preponderance of the evidence: that he suffered an adverse employment action, and that he was replaced by a substantially younger person. Because Plaintiff has failed to establish a prima facie case under the *McDonnell Douglas* burden-shifting analysis, Defendant is entitled to summary judgment on Plaintiff's ADEA claim. *See Warch*, 435 F.3d at 513 ("[A] plaintiff must first establish a prima facie case of unlawful discrimination by a preponderance of the evidence."). Even assuming, however, that Plaintiff could meet his burden of establishing a prima facie case of age discrimination, he would then have to show that a genuine issue of material fact exists as to whether Defendant's legitimate nondiscriminatory

---

³ Jimmy Wagstaff, a LSM manager who applied for Plaintiff's old position when Mr. Phillips left, also agreed that Mr. Phillips was not placed in that position on an interim basis. (ECF No. 42-32 at 8–9.)

reason for allegedly constructively discharging Plaintiff was a mere pretext for discrimination. *See id.* at 514.

    *3. Pretext*

Here, Defendant's nondiscriminatory reason for transferring Plaintiff from LSM to an individual contributor role in DPS was that an independent HR investigation found that "Plaintiff's behavior was negatively affecting the culture" in the LSM department. (*See* ECF No. 33 at 1.) Specifically, the investigation found that Plaintiff was "known to overreact, interrupt and in general be disrespectful and rude to others." (ECF No. 33-5.) Because Defendant's burden at this stage "is one of production, not persuasion," *Warch*, 435 F.3d at 514 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)), the Court concludes that Defendant has articulated a legitimate, nondiscriminatory reason for transferring Plaintiff.

To show pretext, Plaintiff can either show that Defendant's "explanation is 'unworthy of credence' or . . . offer[ ] other forms of circumstantial evidence sufficiently probative of age discrimination." *Mereish*, 359 F.3d at 336 (quoting *Burdine*, 450 U.S. at 256). The plaintiff holds the ultimate burden to convince the factfinder that he was the victim of age discrimination. *Id.*

Plaintiff argues that Defendant's stated reasons for his transfer are pretextual, and that age discrimination was the true reason for Plaintiff's transfer to DPS. (ECF No. 42 at 19–22.) While Plaintiff criticizes both Ms. Mabry's initial report and Ms. Brown's subsequent, independent report, (*id.* at 5–8, 19), Mr. Kenyon only relied on Ms. Brown's independent report to make his decision regarding Plaintiff's transfer, (*see* ECF No. 34-7 ¶¶ 19–23).

15

Plaintiff argues that Ms. Brown, in her report, "distorted the feedback she received" from the employees she interviewed. (ECF No. 42 at 19.) In support of that argument, however, Plaintiff only cites to a range of fifteen pages from Ms. Brown's deposition transcript, in which Ms. Brown reviews her notes from her interviews with Biogen employees and explains where they support her findings in her report. (*See* ECF No. 42-33 at 43–57.) The Court finds that the evidence cited does not show that Ms. Brown "distorted" any feedback in her report, (*see id.*), and Plaintiff points to no other evidence that would show that Ms. Brown's report was pretext for discrimination.

Plaintiff also attempts to argue that age discrimination was the real reason for Plaintiff's transfer to DPS. (ECF No. 42 at 20–22.) Even though Mr. Kenyon testified that he had the decision making authority and made the decision to transfer Plaintiff, (ECF No. 34-7 ¶¶ 22–23), Plaintiff argues that Ms. Mabry, the HR site director for the RTP facility, was "principally responsible" for Plaintiff's transfer and that she had a "discriminatory intent," (ECF No. 42 at 20–21 (quoting *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 288 (4th Cir. 2004), *abrogated in part on other grounds*, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 F.3d 338, 360 (2013))). This contention is not supported by the evidence for two reasons. First, Plaintiff fails to point to any evidence in the record that would show that Ms. Mabry had any "discriminatory intent" toward Plaintiff.[4] (*See* ECF No. 42 at 20–21.) Second, any allegedly discriminatory intent by

---

[4] Plaintiff's purported evidence of Ms. Mabry's discriminatory intent includes: (1) testimony that Ms. Mabry advocated for younger candidates that another Biogen employee "felt did not have the qualifications to be in those positions," (ECF No. 42-30 at 9–11); (2) testimony that Ms. Mabry encouraged managers to hire recent college graduates but did not encourage managers to hire older employees, (ECF No. 42-32 at 31); and (3) a presentation entitled "Successfully Engaging People Across Generational Lines," (ECF No. 42-28).

16

Ms. Mabry, who authored the first report regarding LSM's culture issues, was buffered by Ms. Brown, who authored the second, independent report on which Mr. Kenyon relied to make his decision. (*See* ECF No. 34-7 ¶¶ 19–20.) Plaintiff does not make any arguments that Ms. Brown or Mr. Kenyon harbored any age-based discriminatory animus. Therefore, Plaintiff has failed to show that age discrimination was the real reason that Plaintiff was transferred to DPS.

Plaintiff has failed to prove by a preponderance of the evidence that Ms. Brown's report was mere pretext and that age discrimination was the true reason for his transfer to DPS. Accordingly, Defendant is entitled to summary judgment as a matter of law on Plaintiff's ADEA claim. *See Mereish*, 359 F.3d at 339, 340.

### C. NCEEPA

Defendant is also entitled to summary judgment with respect to Plaintiff's claim for constructive discharge in violation of North Carolina public policy. North Carolina courts and federal courts applying North Carolina law have held that NCEEPA does not create a private cause of action for constructive discharge in violation of public policy. *Jones v. Duke Energy Corp.*, 43 F. App'x 599, 600 (4th Cir. 2002) (per curiam); *Littell v. Diversified Clinical Servs.*, No. 1:10CV152, 2013 WL 1951912, at *7–8 (M.D.N.C. May 10, 2013), *report and recommendation adopted in part*, 2013 WL 5430518 (M.D.N.C. Sept. 27, 2013); *Gallimore v. Newman Mach. Co.*, 301 F. Supp. 2d 431, 453–54 (M.D.N.C. 2004); *see Whitt v. Harris Teeter, Inc.*, 614 S.E.2d 531, 532 (N.C. 2005), *adopting dissenting opinion at* 598 S.E.2d 151, 159–63 (N.C. Ct. App. 2004) (McCullough, J., dissenting). Because constructive discharge in violation of public policy is not a cognizable claim under North Carolina law, Defendant is entitled to summary judgment

on that claim as well. *See Celotex*, 477 U.S. at 323 (stating that summary judgment is proper if the movant shows that it is "entitled to a judgment as a matter of law" (quoting Fed. R. Civ. P. 56(a))).

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendant's Motion to Seal Documents or, in the Alternative, for In Camera Review, (ECF No. 36), and Plaintiff's Motion to Seal Documents, (ECF No. 44), are GRANTED. The documents initially filed under seal, (ECF Nos. 35-1 to 35-4, 45-1 to 45-23), shall be permanently sealed.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment, (ECF No. 32), is GRANTED, and Plaintiff's claims against Defendant are hereby DISMISSED WITH PREJUDICE.

A Judgment dismissing this action will be entered contemporaneously with this Order.

This, the 24th day of April 2019.

/s/ Loretta C. Biggs
United States District Judge